## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| VERMEER MANUFACTURING COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | Case No. _____ |
| WESTERRA EQUIPMENT LIMITED PARTNERSHIP, | ) ) ) | |
| Defendant. | ) ) ) | |

## **COMPLAINT**

Plaintiff Vermeer Manufacturing Company ("Vermeer"), for its Complaint against Westerra Equipment Limited Partnership ("Vermeer BC"), respectfully states as follows:

### NATURE OF ACTION

1.      This is a civil action for a declaratory judgment arising out Vermeer BC's numerous and repeated, material breaches of the parties' dealer agreement and Vermeer's intent to terminate the agreement.

2.      Central to this dispute is Vermeer BC's continued, persistent, and systemic failure to comply with its contractual obligations to: (i) properly and effectively service Vermeer's end-use customers; (ii) use its best efforts to market, sell, distribute, and service Vermeer's industrial equipment and software products and develop a market for them; (iii) maintain an adequate, properly trained professional staff to adequately represent Vermeer's full line of industrial equipment and service Vermeer's customers; (iv) invest in and maintain required and proper facilities to represent the Vermeer brand, sell and service products, and support customers; (v) maintain adequate parts and equipment inventory levels necessary to service Vermeer's

customers; and (vi) limit its sales, display, leasing, rental, and service of Vermeer branded wholegoods and parts to its authorized locations and customers located in its assigned territory in British Columbia.

3.     These essential and reasonable obligations were clearly delineated in multiple dealer agreements entered into by and between Vermeer or Vermeer-owned entities and Vermeer BC (the "Industrial Dealer Agreements") since 2011 and have been the subject of continued discussions related to Vermeer BC's deficient performance of its service, personnel, facility, branding, and inventory obligations – which Vermeer has continuously attempted to work with Vermeer BC to rehabilitate – for the better part of the last decade.

4.     More specifically, Vermeer BC's performance failures have been the subject of ongoing efforts by Vermeer to rehabilitate and aid Vermeer BC's cure of these performance deficiencies from at least 2014 through to the present, but despite these efforts, Vermeer BC has continued to fall short of Vermeer's prescribed cure thresholds and requirements. And, although Vermeer developed detailed action plans and had critical conversations with Vermeer BC regarding performance obligations and needed improvement in key areas to drive performance rehabilitation in at least 2014, 2015, 2016, 2017, 2023, and 2024, Vermeer BC has continuously and persistently failed to properly remedy and maintain remedies for the identified, systemic performance deficiencies.  This failure constitutes a material breach of Vermeer BC's performance obligations under the Industrial Dealer Agreements.

5.     As a result of Vermeer BC's continuing and systemic breaches, Vermeer issued a written Notice to Cure on November 30, 2023 ("Cure Notice") outlining Vermeer BC's repeated and continuing defaults and specifying what actions would be required to cure those defaults in compliance with the terms of the Industrial Dealer Agreements, and informing Vermeer

4854-9922-0662.8

BC that failure to adequately and timely cure the deficiencies identified would lead to termination of the Industrial Dealer Agreements.

6.     As in the past, while Vermeer BC has addressed some of the concerns outlined in the Cure Notice, it has failed to address some of the most fundamental deficiencies noticed.  Those are the same deficiencies it has previously purported to address in response to past cure notices and, after the threat of termination was removed, failed to maintain.  With respect to the remaining deficiencies identified, Vermeer BC has made clear it disputes Vermeer's material and reasonable requirements and that it disputes Vermeer's right to take action as a result.

7.     Vermeer now seeks a declaration from this Court that it has the contractual right under the Industrial Dealer Agreements to terminate those agreements and Vermeer BC's appointment as an authorized Vermeer industrial dealer.

## PARTIES

8.     Plaintiff Vermeer is an Iowa corporation with its principal place of business at 1210 Vermeer Road E, Pella, Iowa, 50219.  Vermeer and its subsidiaries manufacture a wide variety of high-quality industrial equipment and related software products, which it sells to customers in several industries, including mining, forestry, excavation, landscaping, and utility, throughout the United States and Canada through a network of independent authorized dealers who operate in designated exclusive territories pursuant to dealer agreements with Vermeer.

9.     Upon information and belief, Vermeer BC is a Canadian limited partnership with its principal place of business at 10240 Grace Rd., Surrey, British Columbia. Vermeer BC is engaged in the business of selling and servicing Vermeer's industrial equipment in portions of British Columbia.  Upon information and belief, none of Vermeer BC's general or limited partners is a citizen of the state of Iowa.

10.     Vermeer BC serves as the exclusive authorized dealer of certain of Vermeer's equipment and software products pursuant to six separate Industrial Dealer Agreements: (a) the July 2020 Industrial Dealer Agreement – Track/Specialty Excavation by and between Vermeer and Westerra Equipment Limited Partnership; (b) the July 2020 Industrial Dealer Agreement – Underground Installations by and between Vermeer and Westerra Equipment Limited Partnership; (c) the July 2020 Industrial Dealer Agreement – Environmental Product Group by and between Vermeer and Westerra Equipment Limited Partnership; (d) the July 2020 Industrial Software and Related Products Distribution Agreement by and between Vermeer and Westerra Equipment Limited Partnership; (e) the April 2021 MultiOne Sub-Distribution Agreement for Compact Articulated Loaders by and between Vermeer and Westerra Equipment Limited Partnership; and (f) the October 2021 Industrial Dealer Agreement – Vermeer MV Solutions Business Unit by and between Vermeer and Westerra Equipment Limited Partnership. True and correct copies of the respective Industrial Dealer Agreements are attached to this Complaint as Exhibits A through F.

11.     Vermeer BC's relationship with Vermeer is further governed by the Vermeer Corporation Industrial Dealer Policy Letter for the United States and Canada (the "Dealer Policy Letter"), which is expressly incorporated into the Industrial Dealer Agreements by reference.  A true and correct copy of the most recent version of the Dealer Policy Letter is attached to this Complaint as Exhibit G. The Vermeer industrial dealer network in the United States and Canada is also referred to as Vermeer's North American, or domestic, dealer network.

## JURISDICTION AND VENUE

12.     This Court possesses subject matter jurisdiction over this declaratory judgment action pursuant to 28 U.S.C. §§ 1332 and 2201 because Vermeer seeks a declaration of its rights and legal relations with respect to Vermeer BC under the Industrial Dealer Agreements,

4

complete diversity of citizenship exists between Vermeer and Vermeer BC, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13.     This Court has personal jurisdiction over Vermeer BC in that Vermeer BC has established a long-term contractual business relationship with Vermeer, an Iowa corporation, and has regularly purchased goods from Vermeer and directed that they be shipped to Vermeer BC from certain of Vermeer's facilities in Iowa.

14.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) because this jurisdiction is where a substantial part of the property that is the subject of the action is situated and Vermeer BC is subject to the jurisdiction of this Court through the agreement between the parties which establishes that the agreement was made in Pella, Iowa and the Agreement shall be governed by the laws of the State of Iowa.  Venue is also appropriate in this Court pursuant to 28 U.S.C. § 1391(c) because Vermeer BC is not resident in the United States.

## FACTS

### *The Parties' Relationship and the Industrial Dealer Agreements*

15.     Vermeer was founded in Pella, Iowa in 1948 and is a manufacturer of agricultural and industrial equipment.  Today, that equipment is sold worldwide through a network of independent, authorized dealers, including Vermeer BC.

16.     Subject to limited exceptions, Vermeer's industrial dealers are granted the exclusive right to sell and service Vermeer industrial products, accessories, and parts within a geographically defined designated area of sales and service responsibility.

17.     Subject to limited exceptions, Vermeer BC has been granted the exclusive right to sell and service new Vermeer industrial equipment products, accessories and parts and related software in the Province of British Columbia, with the exception of the East Kootenay and Peace River-Liard Regional Districts (the "Territory").  Vermeer BC's rights and obligations as

5

Vermeer's exclusive authorized dealer in the Territory are set forth in the Industrial Dealer Agreements attached as Exhibits A–F and the Dealer Policy Letter, attached as Exhibit G.

18.     Vermeer BC is a part of the Wesgroup Equipment family of companies and offers limited sales, service, and support of Vermeer products through select Williams Machinery & Westerra Equipment locations in British Columbia.  The primary locations are in Abbotsford, Kamloops, and Nanaimo with limited service and parts capabilities in Kelowna, Victoria, and Prince George.  None of these are dedicated Vermeer facilities. Instead, Vermeer is represented as just one of at least eight other equipment brands, including:  Bobcat, JCB, DEVELON, Linde, Konecranes, Terberg, Ammann and Clark.

19.     Nor does Vermeer BC have a dedicated Vermeer sales and service location in the greater Vancouver metro area or the immediately surrounding municipalities. Vermeer BC has never had a dedicated Vermeer facility, making Vermeer BC the only Vermeer industrial dealer in the United States and Canada without a dedicated Vermeer sales and service location.

20.     Vermeer BC also operates under the names of, or is affiliated with, Westerra Equipment and WE Rent as part of the Wesgroup family of companies.  In addition to the locations above where Vermeer BC is authorized to operate as a Vermeer dealer, Westerra Equipment and/or WE Rent also has a facility in Edmonton, Alberta. That location is outside of the Territory and in an area where another Vermeer industrial dealer has exclusive rights to sell and service new Vermeer equipment and products.

### *Key Contractual Provisions of the Industrial Dealer Agreement*

21.     In all material respects relevant to this dispute, the rights and obligations imposed upon Vermeer BC related to its sales and service of Vermeer's products are substantially similar across each of the above-listed Industrial Dealer Agreements.

6

4854-9922-0662.8

22.     In addition, the Industrial Dealer Agreements require that Vermeer BC "operate its business in strict conformity with the provisions as set out in the current Dealer Policy Letter attached [to the Industrial Dealer Agreement]" and incorporated by reference.

23.     Pursuant to the Industrial Dealer Agreements, Vermeer BC agreed to comply with certain minimum obligations with respect to its sales, service, personnel, facilities, branding, and inventory stocking of Vermeer's industrial equipment products throughout its assigned Territory.   More specifically, Vermeer BC agreed to comply with the following obligations:

> 2. DUTIES OF DEALER.  During the term of this Agreement, Dealer shall use [its] best efforts, skills, and diligence to promote, sell, distribute and service the products, accessories and parts manufactured by the [relevant Vermeer product division] (as well as any products, accessories and parts manufactured by any other Division of the Company for which Dealer may be an authorized dealer), and to develop a market for such items, as set forth in the Company's current Dealer Policy Letter.  Dealer's business premises shall be used exclusively for the sale and servicing of the Company's products as described in this Agreement.  Dealer shall engage a sufficient number of sales personnel and service personnel to adequately service Dealer's area of sales and service responsibility….
> …
>
> 4. INVENTORY.  Dealer shall maintain an adequate product line to supply and accommodate the expected demands of customers within the Dealer's area of sales and service responsibility, which adequate product line is more completely described in the Company's current Dealer Policy Letter attached as Exhibit B hereto and incorporated by reference herein.

(Ex. A, Track/Specialty Excavation Agreement, §§ 2, 4; Ex. B, Underground Installations Agreement, §§ 2, 4; Ex. C, Environmental Product Group Agreement, §§ 2, 4; Ex. F, Vermeer MV Solutions Business Agreement, §§ 2, 4.)

24.     Pursuant to the Industrial Software and Related Products Distribution Agreement, Ex. D, Vermeer BC agreed to comply with the following sales, service, and personnel

obligations, which are substantially similar to Vermeer BC's sales and service obligations under the other Industrial Dealer Agreements:

> 2. DUTIES OF LICENSEE.
>
> 2.1. Licensee agrees to use its best efforts to professionally and effectively market, promote and sell the Software Products. Licensee shall maintain a professional and appropriately trained sales and marketing force with respect[] to marketing, promoting and selling the Software Products.

(Ex. D, Software Distribution Agreement, § 2.1.)

25.     Pursuant to the MultiOne Dealer Agreement, Vermeer BC agreed to comply with the following sales, service, personnel, and inventory stocking obligations, which are also substantially similar to Vermeer BC's obligations under the other Industrial Dealer Agreements:

> 2. DUTIES OF SUB-DISTRIBUTOR.  During the term of this Agreement, Sub-Distributor shall use its best efforts, skills, and diligence to promote, sell, distribute and service the line of [products], attachments, accessories and parts distributed by [Vermeer], and to develop a market for such items, as further described in [Vermeer's] current Dealer Policy Letter and referenced bulletins…. Sub-Distributor shall engage a sufficient number of sales personnel and service personnel to adequately service Sub-Distributor's area of sales and service responsibility….
>
> …
>
> 4. INVENTORY.  Sub-Distributor shall maintain an adequate inventory of [products] and attachments to supply and accommodate the expected demands of customers within the Sub-Distributor's area of sales and service responsibility for which Sub-Distributor is granted exclusive sales and service rights, which adequate product line is more completely described in [Vermeer's] current Vermeer Industrial Dealer Policy Letter.

(Ex. E, MultiOne Sub-Distribution Agreement, §§ 2, 4.)

26.     Section I(B) of the Dealer Policy Letter, Ex. G., requires Vermeer BC to maintain a minimum capitalization rate and provides that exceptions to the requirement must be approved in writing and only after submission of an approved plan to come into compliance in a specified period of time.

27.     Each of Vermeer's industrial equipment dealers in the United States and Canada is similarly assigned an exclusive territory in which it is authorized to sell and service Vermeer wholegoods and parts.   In furtherance of the exclusivity of each Vermeer dealer's assigned territory, dealers are prohibited from selling new Vermeer equipment or parts where the initial substantial use of the equipment by the ultimate customer will occur outside of the dealer's assigned territory.   Repeated violations of the territorial restrictions of the Industrial Dealer Agreements are expressly identified in the Dealer Policy letter as grounds for termination of the dealer agreements.   Dealer Policy Letter, Ex. G., § II(A)(2)(a). Additionally, Dealers are prohibited from either directly or indirectly establishing, maintaining, or operating a facility for displaying, selling, renting, leasing, or servicing new or used Vermeer products without the prior written approval of Vermeer. *Id.* § II(C)(1).

28.     In five of the six Industrial Dealer Agreements, Vermeer retains the unilateral right to issue to Vermeer BC a Notice to Cure, thereby triggering Vermeer BC's obligation to comply with a Vermeer-prescribed cure process, as follows:

14. TERMINATION BY COMPANY

…

14.1 Cure Process; Notice to Cure.  After Dealer's continued and/or repeated failure to meet the reasonable goals which Company has set for Dealer regarding sales, service, facilities, personnel and financial strength and stability, Company may provide Dealer a written Notice to Cure.  A Notice to Cure shall describe the specific ways in which Dealer has failed to meet Company's expectations and shall prescribe a period of time within which Dealer is expected to make improvements. Company's provision to Dealer of Notice to Cure is not necessarily indicative of any intent of Company to terminate this Agreement, and Company shall determine on a case-by-case basis whether Dealer's failure to make improvements following a Notice to Cure warrants the initiation of termination proceedings; provided that a Notice to Cure [may] not also be used as a default notice under Section 14.2 or 14.3 unless such Notice to Cure clearly states Company's intent to terminate the Dealer Agreement if the specified failures are not timely corrected.

4854-9922-0662.8

(Ex. A, Track/Specialty Excavation Agreement, § 14.1 Ex. B, Environmental Product Group Agreement, § 14.1; Ex. C, Underground Installations Agreement, § 14.1; Ex. E, MultiOne Sub-Distribution Agreement, § 14.1; Ex. F, Vermeer MV Solutions Agreement, § 14.1.)

29.     Relatedly, the same five Industrial Dealer Agreements also provide Vermeer the unilateral right to terminate the agreements, in its sole discretion, "upon Dealer's failure to substantially comply with any essential and reasonable requirements imposed upon Dealer by th[e] Agreement . . ., but only if that requirement is also generally imposed upon similarly situated dealers…."  (Ex. A, Track/Specialty Excavation Agreement, § 14.3 Ex. B, Environmental Product Group Agreement, § 14.3; Ex. C, Underground Installations Agreement, § 14.3; Ex. E, MultiOne Sub-Distribution Agreement, § 14.3; Ex. F, Vermeer MV Solutions Agreement, § 14.1.)

30.     Pursuant to the sixth Agreement, the Industrial Software and Related Products Distribution Agreement, Vermeer retains the unilateral right to terminate all, or a portion, of the agreement, without providing a corresponding cure process, as follows:

> 8. TERM AND TERMINATION.  …. This Agreement will terminate: (a) On the thirtieth (30th) day after either party gives the other written notice of a breach by the other of any material term or condition of this Agreement, unless the breach is cured before that day….

(Ex. D, Software Distribution Agreement, § 8.)

31.     All dealer agreements between Vermeer and Vermeer BC since Vermeer BC became a dealer in 2011 have contained substantially identical provisions.

### *Vermeer BC's Deficient Performance Under the Industrial Dealer Agreements*

32.     Vermeer BC first became a Vermeer dealer in 2011 when it purchased a predecessor Vermeer dealer and Vermeer consented to the assignment of the predecessor's Industrial Dealer Agreement to Vermeer BC.  That consent was preceded by a due diligence

process in which Vermeer requested, and Vermeer BC presented, certain information regarding Vermeer BC's ownership, management, and business plan.  In Vermeer BC's submissions to Vermeer, it projected that by its third year of operations as a Vermeer dealer, it would have over $10 million in retail sales of over 200 new Vermeer products. After over 13 years, Vermeer BC has never come close to the new product sales or market it projected.

33.     Vermeer BC's poor sales performance stems from its failure to exercise its best efforts and comply with its other contractual obligations under the Industrial Dealer Agreements and Dealer Policy Letter that have been the subject of numerous discussions between Vermeer and Vermeer BC since at least 2014.

34.     By letter dated October 25, 2014, Vermeer expressed its frustration "with the level of commitment and execution shown by [Vermeer BC] toward the Vermeer product line" as Vermeer BC had failed to accomplish the business plan it proposed to Vermeer when seeking to become a dealer.  Instead, Vermeer noted that "there have been moments of progress only to be countered with setbacks."

35.     The October 25, 2014 letter was followed by another communication dated November 26, 2014, following a visit by Vermeer to Vermeer BC the previous week to "outline the expectations Vermeer Corporation has of Vermeer British Columbia." These expectations included:

- Establish a Vermeer dedicated facility in the lower BC mainland (Vancouver) by July 1, 2015
- $3.25 million in equipment purchases from November 3, 2014 through October 31, 2015
- $500,000 in factory parts purchases from November 3, 2014 through October 31, 2015
- Complete the training attendance goals outlined in Vermeer BC's 2015 program
- Appoint a dedicated Vermeer only General Manager to focus on the Vermeer business

4854-9922-0662.8

- Appoint a dedicated Vermeer only Parts and Service Manager
- Submit monthly financial reports to Vermeer
- Exhibit at the shows outlined in Vermeer BC's events calendar
- Submit monthly call reports outlining all face to face contacts and outlining customer and new prospect engagement
- Conduct specified dealer visits
- Attend association events outlined in Vermeer BC's events calendar

36.     Vermeer BC responded that it was in "complete agreement" to fulfill several of Vermeer's expectations except (a) appointing a Vermeer-dedicated Parts & Service Manager and (b) establishing a Vermeer dedicated facility in Vancouver.  Instead of a facility, Vermeer BC stated it was "considering co-branding [its] Kamloops facility…."  In that letter, Vermeer BC stated its plan would "allow [it] sufficient time to develop a proper real estate plan for the lower mainland which will likely stretch into 2016."

37.     In January 2015, Vermeer provided a written Notice of Cure to Vermeer BC, setting forth expectations based on the previous communications. In that Notice, Vermeer once again set forth its expectation for a Vermeer-dedicated facility and asked for (a) a timeline for a proposal for due diligence as Vermeer BC examined a dedicated Vermeer facility for lower mainland BC, and (b) a volume threshold that Vermeer BC believed justified a separate facility commitment.

38.     On September 18, 2015, Vermeer again communicated its disappointment with Vermeer BC's performance.  Despite Vermeer BC's expressed "complete agreement" with most of the expectations outlined in Vermeer's November 2014 letter, Vermeer noted that Vermeer BC had failed to meet almost all of the expectations and goals it agreed to:

> Among other goals, Vermeer BC will likely fall substantially short of the sales numbers to which it agreed.  Additionally, it does not appear Vermeer BC will meet expectations for staffing, facilities and branding and has even failed to satisfy its commitment to provide monthly financial statements to Vermeer Corporation even after those documents were requested.

4854-9922-0662.8

In light of these ongoing deficiencies, Vermeer stated:

> While Vermeer Corporation has been and remains committed to assisting Vermeer BC in accomplishing its 2015 goals, consistent with the Cure Process set forth, it appears a termination of the distribution Agreement between Vermeer Corporation and [Vermeer BC] is imminent.

39.     In a follow-up communication, Vermeer made clear to Vermeer BC that the two most critical of Vermeer BC's deficiencies were the hiring of a Vermeer-dedicated General Manager and establishment of a Vermeer-only facility.  Vermeer BC indicated that it was continuing its search for a general manager and again proposed the previously-rejected Kamloops location for a Vermeer-dedicated facility.

40.     By letter dated December 18, 2015, Vermeer extended the period for Vermeer BC to cure its deficiencies.  Vermeer BC disagreed with the 2016 sales expectations set by Vermeer but agreed to meet all other requirements.  The following year, by letter dated December 22, 2016, Vermeer relented and allowed Vermeer BC to be removed from its cure program in light of the efforts it had made, the achievement of most of the expectations set for 2016, and the commitments Vermeer BC made to ongoing progress toward Vermeer's expectations.

41.     However, just six short months later, in June 2017, Vermeer identified a new default by Vermeer BC.  Specifically, Vermeer has a longstanding minimum capitalization requirement to ensure dealers maintain sufficient capital to withstand changes in market conditions.  Upon review of Vermeer BC's December 31, 2016 financial statements, Vermeer BC's capitalization rate was substantially below the minimum requirement, and as of March 31, 2017 Vermeer BC's capitalization rate had deteriorated further.

42.     By 2023, Vermeer BC's performance had again deteriorated to a level that could no longer be accepted.  Accordingly, in the fall of 2023, Vermeer began communications

4854-9922-0662.8

with Vermeer BC regarding its concerns with the manner in which Vermeer products were being represented by Vermeer BC, Vermeer BC's sales and service performance, and its overall compliance with Vermeer dealer requirements.  Vermeer expressed its concern to Vermeer BC that Vermeer BC was not fully engaged as a Vermeer dealer and that it lacked facilities, staffing and support consistent with Vermeer dealers generally, resulting in sub-par sales performance and reports of failures to properly service and support Vermeer customers. Several of these concerns were previously raised when Vermeer BC was placed on cure in 2015 and were areas of concern where Vermeer BC had either failed to maintain previous progress or had failed to achieve as promised.

43.     By letter dated November 30, 2023 ("2023 Cure Letter"), Vermeer notified Vermeer BC that it was once again being placed in a cure program and Vermeer outlined a schedule of deficiencies and a timeline by which it expected Vermeer BC to cure them.  In addition, Vermeer noted Vermeer BC's lack of engagement in comparison to the rest of the Vermeer dealer network, as evidenced by (among other things) Vermeer BC's dealer principal's failure to attend the annual Vermeer Dealer Meeting, and Vermeer BC's lack of energy and enthusiasm for the Vermeer brand, all of which has had a detrimental impact on the Vermeer customer experience in British Columbia and the overall success of the Vermeer brand.  A true and correct copy of the 2023 Cure Letter is attached as Exhibit H.

44.     Among others, a complete list of which is set forth at Exhibit H, the deficiencies outlined in the 2023 Cure Letter included deficiencies that had been raised by Vermeer since 2014:

a) "After over ten years of ownership, [Vermeer BC] does not maintain a Vermeer-only branded facility, or any facility that complies with the Vermeer brand standards common across our distribution network.  No other industrial dealer in the United States or Canada lacks a Vermeer-dedicated facility, which

14

is plainly required by the terms of the [Industrial Dealer] Agreements and Dealer Policy Letter."

b) "In February 2016, [Vermeer BC] committed to hire and maintain a General Manager for the Vermeer business.  Nearly eight years later, this remains an issue. …"

c) Since Cristhian de la Pena received additional responsibilities associated with the WE Rent division of Westerra, [Vermeer BC] has been without a dedicated sales manager.  [Vermeer BC] previously committed to having this seat filled by the end of 2022.  One year later, it is unfilled."

d) "By being a Vermeer dealer, Vermeer requires, and [Vermeer BC] agreed to, maintaining a minimum capitalization rate.....  As of the date of this document, [Vermeer BC] has not provided financial documents that would prove otherwise so the present understanding is that [Vermeer BC] does not meet that requirement."

45.     By letter dated January 22, 2024, Vermeer BC purported to be back in compliance with Vermeer's capitalization requirement, but made clear that it rejected that requirement should be applied to it.

46.     Also in its January 22, 2024 letter, Vermeer BC proposed the repeatedly rejected Kamloops area as the site for a Vermeer-specific facility or, alternatively, a site in Vancouver incapable of providing service to Vermeer equipment.

47.     Vermeer has consistently made clear to Vermeer BC that a Vermeer-dedicated Kamloops facility is not an acceptable alternative to one in Greater Vancouver, which is hundreds of miles and hours of travel away from Kamloops.  Nevertheless, Vermeer BC continues to reject Vermeer's requirement that it establish a Vermeer-dedicated facility in Vancouver and continues to insist that one in Kamloops is appropriate.

48.     Since it became a Vermeer dealer in 2011, Vermeer BC has been the lowest performing, least engaged, and least driven Vermeer industrial dealer in its North American network.  For example, since at least 2015, Vermeer BC has perennially been last among these

industrial dealers in purchases of Vermeer products by substantial margins.  As additional

examples of Vermeer BC's lack of performance and engagement with the Vermeer brand:

    a)  All other Vermeer industrial dealers in North America have a Vermeer-dedicated facility in or near the main population center(s) of their assigned territory.  Vermeer BC is the only Vermeer industrial dealer who has steadfastly refused to comply with this expectation.

    b)  Vermeer BC's team lacks the necessary personnel and detailed technical product knowledge and capabilities to support demonstrations, troubleshoot, or provide assistance that enhances customer loyalty and encourages repeat business.  Vermeer BC's sales and service teams also lack the necessary product understanding to address complex customer inquiries and provide tailored solutions, preventing Vermeer from maximizing conversion rates or customizing the approach to meet individual customer needs in ways that resonate with customers.

    c)  Vermeer industrial dealers are expected to report parts and wholegood inventories daily. While all other Vermeer industrial dealers in the United States and Canada consistently do so, Vermeer BC consistently does not.

    d)  Vermeer expects dealerships to utilize standard job codes as a tool to create a more consistent customer experience and help dealerships better manage their service departments.  Vermeer BC is the only North American dealer who has not met this expectation.

    e)  Vermeer regularly hosts events and utilizes and tailors these events to network, exchange ideas, and gain valuable insights into market trends, innovations, and customer preferences; showcase the latest products or services to provide firsthand experience with new offerings; curate sessions on market research, consumer behavior, and industry analysis to shape business strategies; interact with other dealer leadership to learn about market positioning, strengths, and weaknesses to refine market approaches; and engage with customers to understand pain points and tailor offerings accordingly. Unlike other North American industrial dealers, Vermeer BC fails to regularly participate in these events.

    f)  Vermeer sponsors a program providing Dealer feedback on key performance metrics and various comparative analysis of their performance and to that of peer dealers. Vermeer BC has consistently performed poorly and has failed to utilize feedback provided by this program resulting in significant under-performance.

    g)  Vermeer also maintains a Brand Ambassador program that identifies and defines tactics and best practices for providing excellent customer service. The program ranks dealers through a scoring system based upon categories in sales

4854-9922-0662.8

growth, compliance, and market performance. Since 2017, Vermeer BC's ranking as a Vermeer Brand Ambassador has been last among all Vermeer North American industrial dealers.

49.     In addition to its lack of engagement and resulting significant under-performance in violation of its obligations under the Industrial Dealer Agreements, upon information and belief, Vermeer BC has also violated Section 1 of the Industrial Dealer Agreements and Section II of the Policy Letter by establishing, representing, and maintaining a facility where it sells, rents, leases, displays, and/or services products outside of its exclusive, assigned territories, specifically in its Edmonton, Alberta facility.  Edmonton is in the exclusive assigned territory of another Vermeer industrial dealer.

50.     On two separate occasions, Vermeer placed secret shopper calls to Vermeer BC's Edmonton, Alberta facility to verify reports and concerns of improper representation. Vermeer BC representatives offered to rent out Vermeer equipment, repair Vermeer equipment, and/or sell or trade-in Vermeer equipment. Vermeer never approved this activity or a facility engaged in this activity outside of Vermeer BC's territory.

51.     Vermeer BC's actions constitute material breaches of the Industrial Dealer Agreements and Dealer Policy Letter, incorporated by reference in the Industrial Dealer Agreements.

52.     Section 14.1 of the Industrial Dealer Agreements provides that "After Dealer's continued and/or repeated failure to meet the reasonable goals which Company has set for Dealer regarding sales, service, facilities, personnel and financial strength and stability, Company may provide Dealer a written Notice to Cure. A Notice to Cure shall describe the specific ways in which Dealer has failed to meet Company's expectations and shall prescribe a period of time within which Dealer is expected to make improvements."

53.     Vermeer sent letters setting forth deficiencies and/or Notices to Cure to Vermeer BC on November 26, 2014, September 9, 2015, and November 30, 2023.  In a telephonic conversation held on July 22, 2024, Vermeer informed Vermeer BC of its intent to proceed with termination.

54.     Section 14.3 of the Industrial Dealer Agreements provides that Vermeer "may, at its option, terminate this Agreement upon Dealer's failure to substantially comply with any essential and reasonable requirements imposed upon Dealer by this Agreement (including those incorporated by reference to the Dealer Policy Letter), but only if that requirement is also generally imposed upon similarly situated dealers…."

55.     Vermeer BC has repeatedly and materially breached the Industrial Dealer Agreements and Dealer Policy Letter requirements and failed to substantially comply with essential and reasonable requirement imposed upon Vermeer BC and all other North American Vermeer industrial dealers.

## COUNT 1 – DECLARATORY JUDGMENT

56.     Vermeer re-alleges Paragraphs 1 - 55 of this Complaint.

57.     Vermeer BC's deficient performance under the Industrial Dealer Agreements with respect to its obligations related to sales, service, personnel, and inventory-maintenance constitutes a failure to substantially comply with the essential and reasonable requirements imposed upon Vermeer BC by the Industrial Dealer Agreements.  In particular, Vermeer BC's deficient performance is a material breach of its obligations under Sections 2 and 4 of the Track/Specialty Excavation Agreement, Environmental Product Group Agreement, Underground Installations Agreement, MultiOne Sub-Distribution Agreement, and Vermeer MV Solutions Business Unit Distribution Agreement (*see* Exs. A, B, C, E, and F), and of its obligations under Section 2 of the Software Distribution Agreement, (*see* Ex. D).

18

58.     Section 14.3 of the Track/Specialty Excavation Agreement, Environmental Product Group Agreement, Underground Installations Agreement, Multi-One Sub-Distribution Agreement, and Vermeer MV Solutions Business Unit Distribution Agreement grant Vermeer the explicit right to terminate Vermeer BC's appointment as an authorized dealer upon Vermeer BC's "failure to substantially comply with any essential and reasonable requirements imposed upon [Vermeer BC] by this Agreement (including those incorporated by reference to the Dealer Policy Letter), but only if that requirement is also generally imposed upon similarly situated dealers." (*See* Exs. A, B, C, E, and F).  Vermeer BC failed to substantially comply with the sales, service, personnel, and inventory-maintenance obligations imposed upon it through Sections 2 and 4 of the Track/Specialty Excavation Agreement, Environmental Product Group Agreement, Underground Installations Agreement, MultiOne Sub-Distribution Agreement, and the Vermeer MV Solutions Business Unit Distribution Agreement, which obligations are essential and reasonable.  Vermeer BC has likewise failed to cure its performance deficiencies under these agreements despite repeated opportunities.  Thus, Vermeer has the contractual right to terminate the Track/Specialty Excavation Agreement, Environmental Product Group Agreement, Underground Installations Agreement, MultiOne Sub-Distribution Agreement and Vermeer MV Solutions Business Unit Distribution Agreement.

59.     Likewise, Section 8 of the Software Distribution Agreement grants Vermeer the explicit right, upon 30 days' written notice, to terminate Vermeer BC's appointment as an authorized dealer upon "breach by [Vermeer BC] of any material term or condition of this Agreement, unless the breach is cured before" the effective date of termination.  (*See* Ex. D).  Here, Vermeer BC's deficient performance of its sales, service, personnel, and inventory-maintenance obligations constitutes a material breach of its obligations under the Software Distribution

Agreement – in particular, Section 2 of that agreement.  (*Id*.)  Thus, Vermeer has the contractual right to terminate the Software Distribution Agreement.

60.     An actual, justiciable controversy exists between Vermeer and Vermeer BC with respect to whether Vermeer BC's continued sales, service, personnel, and inventory-maintenance performance deficiencies constitute a material breach of the Industrial Dealer Agreements for which Vermeer has the contractual right to terminate Vermeer BC's Industrial Dealer Agreements.  When Vermeer informed Vermeer BC of its intent to move forward with termination, Vermeer BC informed Vermeer that there was nothing further to discuss, and that Vermeer BC would be seeking legal counsel as a result of the planned termination.

61.     The parties' positions with respect to Vermeer BC's deficient performance at Vermeer BC have created doubt as to the rights and legal relations between them.

62.     Therefore, Vermeer seeks, and hereby respectfully prays for, an order declaring that it has the contractual right to terminate Vermeer BC's appointment under all six Industrial Dealer Agreements as a result of Vermeer BC's continued, persistent, and systemic failure to comply with its contractual obligations to: (i) properly and effectively service Vermeer's end-use customers; (ii) use its best efforts to market, distribute, and service Vermeer's industrial equipment and software products; (iii) maintain an adequate, properly trained professional sales and customer service staff to service Vermeer's customers; and (iv) maintain adequate parts and equipment inventory levels necessary to service Vermeer's customers.  Further, Vermeer seeks a declaration that its actions do not constitute a breach of the Industrial Dealer Agreements, nor a breach of the implied covenant of good faith and fair dealing.

WHEREFORE, Vermeer respectfully requests that the Court enter an Order:

4854-9922-0662.8

A.      Declaring that Vermeer has the contractual right to terminate Vermeer BC's appointment as an authorized dealer under the Industrial Dealer Agreements as a result of Vermeer BC's deficient performance of its obligations under those Agreements;

B.      Declaring that Vermeer's termination of Vermeer BC's appointment as an authorized dealer under the Industrial Dealer Agreements did not breach the Industrial Dealer Agreements nor the implied covenant of good faith and fair dealing.

Dated:  July 22, 2024                         Respectfully submitted,


                                              */s/  Michael R. Reck*
                                              Michael R. Reck (AT0006573)
                                              BELIN MCCORMICK, P.C.
                                              666 Walnut Street, Suite 2000
                                              Des Moines, IA 50309
                                              P. (515) 243-7100
                                              F. (515) 558-0645
                                              E. mrreck@belinmccormick.com

                                              Roberta F. Howell WI Bar No. 1000275
                                              Connor A. Sabatino WI Bar No. 1074318
                                              FOLEY & LARDNER LLP
                                              150 East Gilman Street
                                              Madison, WI 53703-1482
                                              608.257.5035
                                              608.258.4258
                                              *Pro Hac Vice to be submitted.*

                                              Attorneys for Plaintiff Vermeer Manufacturing
                                              Company